*In re* PETITION OF AUDITOR GENERAL.

APPEAL OF DUTCHER.

1. CONSTITUTIONAL LAW—STATUTES.
    Unless a statute is manifestly and plainly unconstitutional, it ought to be sustained, particularly when the same question might arise in other counties, in order to have final and uniform law. ·

2. SAME—AMENDATORY STATUTES—REPEAL.
    Act purporting to amend one section of an act and containing a sentence stating that provisions of three other named sections requiring publication of a certain list were repealed sought to accomplish an object in a manner contrary to constitutional provision requiring altered or amended sections to be re-enacted and published at length, where so-called repeal actually is an amendment because of other matter in said three sections, and title of amendatory act is silent as to matter of repeal (1 Comp. Laws 1929, §§ 3448, 3456, 3457, 3458; Act No. 243, Pub. Acts 1935).

3. TAXATION—SALE OF PROPERTY FOR UNPAID TAXES—COURTS.

Property might be sold for unpaid taxes by an administrative body if the law so provided, but in this State it is sold through a proceeding in a court of chancery.

4. SAME—DELINQUENT TAXES—SALES—NOTICE TO PROPERTY OWNER— SERVICE OF PROCESS.

Separate notice to property owner of impending sale of his land for delinquent taxes given by county treasurer after auditor general's petition in foreclosure proceedings has been filed, a notice which does not refer to such proceedings and the failure to receive or serve which does not invalidate the proceedings *held,* not to constitute the equivalent of service of process (1 Comp. Laws 1929, §§ 3448, 3452, 3453, 3456, 3457, 3458, as amended by Act No. 262, Pub. Acts 1933; Act No. 243, Pub. Acts 1935).

5. SAME—CONSTITUTIONAL LAW—DUE PROCESS—SERVICE OF PROCESS —COURTS.

Presumption that property owner knows the law and the effect of failure to pay taxes does not eliminate necessity for personal or substituted service of process where proceedings for sale of land for nonpayment of taxes are conducted in a court (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16; 1 Comp. Laws 1929, § 3448; Act No. 243, Pub. Acts 1935).

6. CONSTITUTIONAL LAW—DUE PROCESS—COURTS—SPECIAL APPEARANCE—TAX SALE.

Specially appearing objectors in proceedings to sell lands for delinquent taxes who do not contest the validity of the tax do not thereby waive right to due process as to court proceedings based on an alleged unconstitutional act (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16; Act No. 243, Pub. Acts 1935).

7. SAME—JUDICIAL POWER—DUE PROCESS—NOTICE—HEARING.

Judicial power is vested in the courts and they may exercise it only in accordance with the procedural rule of due process prescribed by the Constitution, which implies notice and hearing or an opportunity to be heard before an adjudication may be made which will affect the rights of an interested party (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16).

8. TAXATION—FORECLOSURE OF LIEN—DESCRIPTION—DUE PROCESS.

Foreclosure of lien for unpaid taxes is a proceeding against each parcel of land severally and order of publication must describe each parcel separately, in all cases of substituted service, in

order to comport with due process requirements of State and Federal Constitutions, hence statute providing merely for publication of a petition and order merely showing that court proceedings are pending for sale of lands for delinquent taxes, without any description of the lands or designation of the owners thereof is invalid (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16; Act No. 243, Pub. Acts 1935).

9. Costs—Public Question—Constitutionality of Tax Statute. On appeal from decree ordering lands sold for taxes, no costs are awarded where question involved is constitutionality of statute amending general tax law, the question being a public one (Act No. 243, Pub. Acts 1935, amending 1 Comp. Laws 1929, § 3448).

Appeal from Jackson; Simpson (John), J. Submitted April 3, 1936. (January Docket No. 138, Calendar No. 38,959.) Decided April 15, 1936.

Petition by John J. O'Hara, Auditor General, for the sale of certain lands for taxes assessed thereon for the year 1933 and prior years. Fred G. Dutcher and Ada J. Dutcher filed objections thereto. From decree ordering sale, objectors appeal. Reversed.

*David H. Crowley*, Attorney General, and *Edmund E. Shepherd*, *T. Carl Holbrook* and *Earl L. Burhans*, Assistants Attorney General, for petitioner.

*Burney E. Brower* (*Haskell L. Nichols*, *Norman E. Leslie* and *John S. Denton*, of counsel), for objectors.

*Milburn & Semmes* and *Mark T. Davis*, amici curiæ.

Butzel, J. On January 20, 1936, the auditor general filed a petition in the circuit court for the county of Jackson, in chancery, for the sale of certain lands

for the unpaid State and county taxes assessed for 1933 and prior years. Objections were filed on behalf of Fred G. and Ada J. Dutcher, who, alleging lack of due process, appeared specially to contest the jurisdiction of the court. The petition of the auditor general does not describe the lands on which the taxes were delinquent, but refers, for a list of these lands, to "Schedule A" on file in the office of the county clerk and subject to public inspection. The court entered an order stating that the petition would be brought on for hearing at the March term of court and notifying all persons who desired to contest the petition to appear and file their objections; also, that in pursuance of the decree, if entered, the lands would be sold on the first Tuesday in May and thereafter on the succeeding days. The petition and order were published.

At the hearing the objectors, who are appellants herein, and who were delinquent in their payment of taxes for the year 1933 only, raised many objections but principally as to the constitutionality of the act under which these proceedings were had, all of which were overruled but are again raised on appeal. The trial court properly held that unless an act was manifestly and plainly unconstitutional, it ought to be sustained, particularly when the same question might arise in other counties of the State. In this manner a final and uniform decision may be had on appeal.

On appeal additional attorneys representing others have been permitted to file briefs as *amici curiæ.* It appears that similar questions have arisen in other counties.

In the present litigation, both in the trial court and on appeal, the question centers itself on the validity of Act No. 243, Pub. Acts 1935, which is an

act to amend "Section fifty-seven of act number two hundred six of the public acts of eighteen hundred ninety-three, entitled 'An act to provide for the assessment of property and the levy (and collection) of taxes thereon, and for the collection of taxes heretofore and hereafter levied; making such taxes a lien on the lands taxed, establishing and continuing such lien, providing for the sale and conveyance of lands delinquent for taxes, and for the inspection and disposition of lands bid off to the State and not redeemed or purchased; and to repeal act number two hundred of the public acts of eighteen hundred ninety-one, and all other acts and parts of acts in anywise contravening any of the provisions of this act,' as amended, being section three thousand four hundred forty-eight of the compiled laws of nineteen hundred twenty-nine."

Section 3448, 1 Comp. Laws 1929, stated:

"When any county treasurer shall receive from a township treasurer a statement of unpaid taxes, together with a list of the lands on which the same are delinquent, verified according to law, such county treasurer shall enter the same at length on the books in his office, provided for that purpose, and he shall make a transcript of all the descriptions of land returned as delinquent for unpaid taxes, except such as may have been rejected by him, with the several taxes assessed upon such descriptions respectively, which transcript shall be compared by the county clerk with the statement of the county treasurer, and if the county clerk finds it to be a true transcript thereof, he shall add to it a certificate that he has, upon careful examination, found it correct. Such transcript, so made, compared and certified, shall be forwarded by the county treasurer to the auditor general, by the first day of May next after the return of such statement; but such transcript shall be receivable at any time during said month of May,

and the auditor general is hereby authorized, when in his judgment it may be deemed expedient, to extend the time in which said transcript shall be returned to him.''

Under Act No. 243, Pub. Acts 1935, the wording of that section is repeated and the following paragraph is added thereto:

''Within sixty days after the county treasurer shall receive from the township treasurer a statement of unpaid taxes, together with a list of the lands on which the same are delinquent, verified according to law, such county treasurer shall mail to the persons assessed for such unpaid taxes a notice that the same have been returned to the county treasurer as unpaid.  Said notice shall state the amount of taxes unpaid, and penalties, interest and charges thereon, and shall state that a description of the property assessed is on file in the office of the county treasurer: *Provided,* That this paragraph shall not apply in any county of this State until adopted by resolution by a majority vote of the members elect of the board of supervisors of such county. The provisions of sections sixty-four, sixty-five, and sixty-six of this act requiring publication of the list of lands delinquent for taxes are hereby repealed.''

Appellants contend that in addition to other constitutional defects, Act No. 243 is in direct violation of the Constitution, 1908, art. 5, § 21, which provides that:

''No law shall be revised, altered or amended, by reference to its title only; but the act revised and the section or sections of the act altered or amended shall be reenacted and published at length.''

The last sentence of Act No. 243, Pub. Acts 1935, states that provisions of Act No. 206, §§ 64, 65, 66, Pub. Acts 1893 (1 Comp. Laws 1929, §§ 3456, 3457, 3458), requiring publication of the list of lands de-

linquent for taxes are repealed. What was done is the very thing that the Constitution aimed to prevent. The so-called repeal of section 66 (section 3458) actually is an amendment of this section for a large portion of it remains unaffected, and provides for the publication in the instant case. This section, as amended, should have been reenacted and published at length in the amended form so as to conform with the constitutional mandate, hereinbefore quoted. *People* v. *Stimer,* 248 Mich. 272 (67 A. L. R. 552). The confusion that has arisen through failure to reenact the amended section can be readily seen when in Mason's 1935 Supplement to Compiled Laws of 1929, § 3458 is referred to as repealed although as a matter of fact it was only amended. Further, there is nothing in the title of Act No. 243 that indicates the "repeal." It is, therefore, arguable that the act also violates that part of Const. 1908, art. 5, § 21, which states that the object of a law shall be expressed in its title.

We, however, shall plant our decision on the answer to the question of whether, in a chancery suit for the foreclosure of a tax lien, legislation which provides for the publication of a petition and order merely showing that court proceedings are pending for the sale of lands for delinquent taxes, without any description of the lands or designation of the owners thereof, complies with the due process provisions of the State and Federal Constitutions.* It may be said at the outset that there is no disagreement between the parties that property might be sold for unpaid taxes by an administrative body if the law so provided. The method of sale in Michigan for many years, however, is a solemn court proceeding in which it is sought to divest owners from

* U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16.—REPORTER.

the ownership of their property by chancery decree and sale. Although prior to the passage of Act No. 243, descriptions of the lands were published, the publication which is now intended to be the "equivalent to a personal service of notice on all persons who are interested in the lands" (1 Comp. Laws 1929, § 3458) does not describe the lands or the owners thereof. It merely states that a petition has been filed with the circuit court for the sale of certain lands for delinquent taxes, that a hearing and decree is to be entered in the cause, unless successfully contested, and sale had, and that one may determine whether his land is among those involved in the proceeding by going to the office of the county clerk or county treasurer. Does this attempt at substituted service by publication meet the require-. ments of due process in judicial proceedings?

Attorneys for petitioner call attention to the very large number of tax delinquencies that followed the depression and the large expense of advertising the descriptions and point out that the State, in the worthy interest of economy, decided to dispense with the publication of the descriptions, although publishing the rest of the petition and order. Under 1 Comp. Laws 1929, § 3457, as last amended by Act No. 262, Pub. Acts 1933, unless repealed by Act No. 243, Pub. Acts 1935, the cost of advertising for each description runs from 16 cents to 40 cents per description, depending upon the number of descriptions embraced in the advertising. It is asserted on behalf of the objectors that since the State adds a dollar for the cost of advertising for each parcel to the charges against the property, it does not lose anything (1 Comp. Laws 1929, § 3452). It is further claimed on behalf of the petitioner that 1 Comp. Laws 1929, § 3453, makes provision that a separate

notice be sent to each property owner informing him of the unpaid taxes and the impending sale and that this "would satisfy due process of law." It must be noted, however, that the notice provided for does not call attention to the judicial proceedings. It merely warns the owner that his property will be sold unless taxes are paid. The section further provides that the failure to serve such notice shall not invalidate the foreclosure proceedings. The legislature did not intend this notice to constitute the equivalent of service of process. It is further claimed that each property owner necessarily is presumed to know the law and the consequences if he has failed to pay his taxes. This latter argument would have force were this not a judicial proceeding in which there must be either personal or substituted service. As a practical matter, even if the owners of the fee would probably have knowledge of the nonpayment of taxes, holders of mortgages and other liens, leaseholders, etc., might not know of such defaults. When publication is had, instead of all interested in the property being obliged to resort only to the files in the county clerk's office or county treasurer's office, the parties have an opportunity to examine the publication where as a rule property is segregated by townships, cities and villages and then again, not necessarily, but as a rule, by streets and subdivisions, so that they are able to check up and protect their interests. They are not limited to books which, in many counties, may contain descriptions running possibly into many tens of thousands and more. It is further claimed by petitioner that the objectors do not contest the validity of the taxes in any way and therefore they have no standing in court; the latter, however, do not waive the constitutional right of due process when they specially appear to object to the court proceed-

ings, based on what they contend is an unconstitutional act.

The main question before us is not a new one in this State. It was squarely ruled upon in *Thompson* v. *Auditor General,* 261 Mich. 624. In that case, the court, at pages 657, 658, said:

"The judicial power is vested in the courts, which can only act judicially, in accordance with the Constitution which prescribes the procedural rule of due process of law which implies notice and hearing or an opportunity to be heard before an adjudication may be made which will affect the rights of an interested party. * * * The proceeding is one against each parcel of land severally, and the order of publication must describe each parcel separately, in all cases of substituted service, in proceedings against the land, in order to comport with the due process clause of the State and Federal Constitutions.

"Publishing the petition of the auditor general, which includes the lists of lands against which petition is filed and the order of publication which refers to the lands described in the petition published, complies with the constitutional requirement. If constructive service is had in a proceeding *in rem,* against lands, the basic question is what lands? This must be answered by the order of publication which constitutes the service, or there is no constructive service which complies with the mandate of due process of law."

While it is true that in that case the question arose between the auditor general and a publisher, nevertheless the foregoing quotation from the opinion was an accurate statement of the law and applies most fittingly in the instant case. Mr. Justice Potter's opinion in *Thompson* v. *Auditor General, supra,* collected many authorities, and his comprehensive opinion is conclusive of the question at issue in the present case.

Our attention is called to the fact that other lands are being sold for taxes prior to 1933 by other chancery actions by virtue of Act No. 73, Pub. Acts 1935. While it may be claimed that the reasoning of this opinion obviously applies to lands being sold under the present proceeding to lands under Act No. 73, such lands are not involved in objectors' petition.

The decree is reversed. The question being a public one, no costs will be allowed.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, EDWARD M. SHARPE, POTTER, and TOY, JJ., concurred.